<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| NEW HORIZON INVESTMENT CORP. and AZAN INTERNATIONAL, INC., | : : : | Civil Action No. 04-3973 (KSH) |
| Plaintiffs, | : : | |
| v. | : : | |
| MAYOR AND MUNICIPAL COUNCIL OF BELLEVILLE, PLANNING BOARD OF THE TOWNSHIP OF BELLEVILLE, TOWNSHIP OF BELLEVILLE, and ESSEX COUNTY IMPROVEMENT AUTHORITY, | : : : : : : | **OPINION** |
| Defendants. | : : | |

Plaintiffs New Horizon Investment Corp. ("New Horizon") and Azan International, Inc. ("Azan") brought this civil rights action against the Mayor and Municipal Council of Belleville, the Planning Board of the Township of Belleville, the Township of Belleville, and the Essex County Improvement Authority (collectively "defendants") alleging that defendants perpetrated an unconstitutional taking of plaintiffs' real property. Before the Court is defendants' motion to dismiss or stay the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons that follow, defendants' motion is **denied.**

**I.     BACKGROUND**

1

All the facts are taken from the complaint and they will be deemed true for purposes of this Rule 12(b)(6) motion.

New Horizon and Azan are New Jersey corporations. (Compl. ¶¶ 2-3.) The principals of both corporations are Lal and Kaiser Pathan, who are American citizens of Indian descent. (Compl. ¶ 4.) In 1999, New Horizon and Azan acquired two pieces of property from Essex County for investment purposes. (Compl. ¶ 33.) Specifically, New Horizon acquired 6.53 acres of land ("New Horizon property") and Azan acquired 1.38 acres of land ("Azan property"). (Compl. ¶¶ 2, 3.) These properties were formerly part of the Essex County Geriatrics Center site owned by Essex County. (Compl. ¶ 10.) Since plaintiffs acquired the properties they have been taxed as though the properties were residential. (Compl. ¶ 38.)

Defendants Mayor and Municipal Council of the Township of Belleville (the "Town Council") are elected officials of the Township of Belleville ("Belleville"), a municipal corporation of the State of New Jersey, County of Essex. (Compl. ¶¶ 5, 7.) The Town Council enacts zoning ordinances for Belleville pursuant to New Jersey's Municipal Land Use Law of 1975 ("MLUL"). (Compl. ¶ 5.) Defendant Planning Board of the Township of Belleville (the "Planning Board") is a municipal agency as defined in the MLUL. (Compl. ¶ 6.) The Essex County Improvement Authority ("ECIA") is a governmental agency for the County of Essex. (Compl. ¶ 8.)

Before they bought the properties, plaintiffs received a copy of the Belleville zoning map and ordinance book from Belleville officials. These documents indicated that the properties were part of the RA-2 zone permitting single-family residential use with up to eight units per acre. (Compl. ¶ 34.) Plaintiffs met with Belleville officials, including the acting township manager,

2

the tax assessor and the secretary of planning and zoning boards, to discuss development of the properties.  (Compl. ¶ 37.)  Plaintiffs were encouraged to purchase the properties, were told that the Township would welcome development of the properties, and were assured that residential townhouses could be built on the properties rather.  They were not advised  about  "open space" restrictions on the properties.  (Compl. ¶ 37.)

The zoning map and zoning ordinance book provided to plaintiffs prior to their purchase of the properties did not reference the existence of a  Redevelopment Plan.  (Compl. ¶ 35.)  But according to the complaint, and unbeknownst to plaintiffs, in 1993 Belleville had classified a portion of the former Essex County Geriatrics Center site as an area in need of development ("Redevelopment Plan") pursuant to the New Jersey Redevelopment Law.  (Compl. ¶ 13.)  The Redevelopment Plan divided the redevelopment area into three parcels.  (Compl. ¶ 15.)  Parcel 3, which includes what is now the New Horizon and Azan properties, called for open space, passive recreation and playgrounds on the property.  (Compl. ¶ 15.)  The Redevelopment Plan stated that no property would be acquired by Belleville because Essex County owned the property and intended to sell parcel 1 and lease parcel 2 to the same redeveloper to be used and operated as a single development.  (Compl. ¶ 16.)

Plaintiffs point out that the Redevelopment Plan has never been implemented.  (Compl. ¶ 19.)  Plaintiffs maintain that Belleville has never properly amended its zoning ordinance establishing zone use classifications or bulk standards for a redevelopment zone.  (Compl. ¶ 23.)  And plaintiffs point out that the zoning map was not revised to depict any redevelopment zone until June 2001, eight years after the Redevelopment Plan was approved and after plaintiffs brought the properties.  (Compl. ¶ 24.)  The 2001 revisions to the zoning map indicated a

redevelopment zone for the first time but the zoning ordinance still did not provide use classifications or bulk standards.  (Compl. ¶ 24.)  The amended zoning map also failed to identify any ordinances that authorized the amendment and the map failed to reflect any reference to parcel 1, 2 or 3 within the redevelopment zone.  (Compl. ¶ 24.)  Neither the 1993 Redevelopment Plan nor the municipal ordinance were ever filed with the Essex County Planning Board.  (Compl. ¶ 25.)

Plaintiffs maintain that starting in 1995, defendants acted in direct contravention of the 1993 Redevelopment Plan, acted as though there were no "open space" restrictions on plaintiffs' properties and recommended that the former Geriatric Center site be developed for various commercial uses.  (Compl. ¶¶ 26-31.)  Belleville recommended in 1995 and in 1998 that the area be used for significant future development, including an office research park.  (Compl. ¶¶ 29-30.)  Inconsistent with the Redevelopment Plan, in 1998, the former Geriatric Center site was subdivided into eight parcels in contemplation of the sale of the remaining seven parcels by Essex County.  (Compl. ¶ 32.)  Plaintiffs assert that Belleville's subdivision approval and sale without regard to the Redevelopment Plan is absolutely inconsistent with the "open space" restrictions that it now asserts.

In 1998, plaintiffs were the successful bidders on the New Horizon and Azan properties and in 1999, they took title to the properties.  Around this time, Essex County sold five other parcels of the former Geriatrics Center site to non-parties Kessler Development Corporation and Wellington Partners, L.L.C. and Rainmaker Capital, L.L.C ("Rainmaker Parties"), all of whom seek to develop these parcels.  (Compl. ¶ 32.)

Belleville has taxed the plaintiffs' properties as residential, with assessed values

4

consistent with residential zoning and it has accepted tax payment based on the residential

assessments.  Plaintiffs assert this is  inconsistent with properties having permitted uses limited

to "open spaces".  (Compl. ¶ 38.)

On August 14, 2001, the Town Council adopted Ordinance No. 2906, amending the

zoning ordinance and zoning map to create a commercial shopping center district (B-SC)

consisting of portions of the former Geriatric Center site.  (Compl. ¶ 42.)  The new district did

not include the New Horizon and Azan properties but included almost every other parcel of the

former Geriatric Center site.  (Compl. ¶ 42.)  This new B-SC zone permitted large single-

occupant retail establishments, shopping centers, malls and retail warehouse establishments,

office buildings, research facilities and restaurants, and contemplated a gated community style

development.  (Compl. ¶ 43.)

In response to the new zoning ordinance, a complaint in lieu of prerogative writs was

filed in September 2001 by a group of Belleville citizens, captioned Citizens Organizations for

Responsible Redevelopment, et al. v. Council of the Township of Belleville, et al., No. ESX-L-

9243-01 (the "CORR action").  (Compl. ¶ 44.)  The CORR action named as defendants the

Mayor and Council, the Planning board and various parties with purported interest in the former

Essex County property, including the Rainmaker Parties, New Horizon, Azan and Essex County.

(Compl. ¶ 45.)  The CORR action sought to invalidate the B-SC ordinance and compel Belleville

to enforce the "open space" treatment contemplated by the 1993 Redevelopment Plan.  (Compl. ¶

46.)

In 2003, plaintiffs learned that the CORR plaintiffs, the Rainmaker Parties and the

Belleville defendants had been negotiating a settlement in which the Rainmaker Parties' property

would be rezoned for high-density residential development, but plaintiffs' properties would be relegated to "open space." (Compl. ¶ 47.) Plaintiffs were excluded from the CORR action negotiations, which were ultimately successful and incorporated into a settlement agreement. (Compl. ¶ 48.)

Plaintiffs formally voiced their objections to the settlement agreement but their objections were ignored. (Compl. ¶¶ 50, 51.) The settling parties stated that nothing in the settlement prevented plaintiffs from pursuing whatever rights they had in the zoning of their property. (Compl. ¶ 52.) But counsel for the Town Council and Mayor made clear that Belleville and all parties intended to restrict the plaintiffs' properties as "open space." (Compl. ¶ 52.) The state court signed an order entering the Stipulation of Settlement but noted that it was not endorsing the terms of the settlement agreement. (Compl. ¶ 53.)

As contemplated by the settlement agreement, the Town Council adopted Ordinance Nos. 3025 and 3026, which created a Planned Residential Development (PRD) zone with a residential density of 25 units per acre applying only to the Rainmaker Parties. (Compl. ¶ 55.) The Ordinances were passed on March 23, 2004 and published on April 1, 2004. (Compl. ¶ 59.) On information and belief, plaintiffs state in their complaint that the Belleville Zoning Board of Adjustment has granted the owner of Lot 1.01, SOHO Property, a variance allowing enhanced development of its property for senior citizen housing. (Compl. ¶ 50.) Based on this, plaintiffs argue that they are the only owners of property formerly part of the Geriatrics Center site who have been denied the right to develop their property. (Compl. ¶ 61.)

In response to the settlement agreement and new zoning ordinance, plaintiffs filed a complaint in lieu of prerogative writs in Superior Court, Essex County in 2004, challenging the

6

open space restrictions and the zoning ordinances under state law.  (Compl. ¶ 62.)  That action is

currently pending and does not allege any federal constitutional claims.  (Compl. ¶ 62.)

On August 18, 2004, plaintiffs filed the witin action in federal court.

## II.    STANDARD OF REVIEW

A motion to dismiss is premised upon a "failure to state a claim upon which relief can be

granted."  Fed. R. Civ. P. 12(b)(6).  For purposes of such a motion, the Court must accept all

well-pleaded allegations of the complaint as true, give the plaintiff the benefit of all reasonable

inferences that could be drawn therefrom, and grant the motion only if it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief.

Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003).

## III.    DISCUSSION

Defendants argue that the Court should dismiss or stay this matter under the abstention

doctrine articulated in Younger v. Harris, 401 U.S. 37 (1971).   Even if the Court does not

abstain under Younger, defendants urge the Court to dismiss the complaint for failure to state a

claim upon which relief may be granted.

## Younger Abstention

In Younger the Supreme Court ruled that a federal district court has discretion to abstain

from exercising jurisdiction over a particular claim where resolving the claim in federal court

would offend principles of comity by interfering with an ongoing state criminal proceeding.  Id.

Subsequently the Court extended Younger abstention into the civil context.  Ankenbrandt v.

Richards, 504 U.S. 689, 705 (1992).  But it has warned that "abstention rarely should be

invoked."  Id.

In this Circuit, abstention is limited to "a few carefully defined situations" where the following three requirements are satisfied: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims. Gwynedd Properties, Inc. v. Lower Gwynedd Township, 970 F.2d 1195, 1199-1200 (3d Cir. 1992) (citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989)).  All three prongs must be satisfied, and in determining this, the Third Circuit has emphasized that "the mere existence of a pending state proceeding between the parties that parallels the facts of the federal action is not in itself sufficient." Addiction Specialists, Inc. v. Township of Hampton, 411 F.3d 399, 408 (3d Cir. 2005) (citing Gwynedd Properties, 970 F.2d at 1201).

Plaintiffs agree the first prong of the Younger analysis has been satisfied in that there are pending state proceedings that are judicial in nature.  They have opposed this motion on the basis that the second prong is not satisfied, and consequently the third prong need not be reached.

A very recent Third Circuit opinion provides guidance.  In Addiction Specialists, Inc. v. Township of Hampton, 411 F.3d 399, 408 (3d Cir. 2005), the plaintiff, an operator of a methadone clinic, sought a zoning change from the defendant township for leased property.  The township denied the plaintiff's application and the plaintiff appealed to the state court.  While the state action was pending, the plaintiff filed a federal action alleging constitutional and federal statutory violations and challenging the legality of Pennsylvania's land use policies.  The district court abstained under Younger and dismissed the entire complaint.  Id. at 404.

In discussing the second prong of the Younger analysis, i.e., whether the ongoing state

case implicated important state interests, the court found that "zoning and land use issues are of traditional significance to states."  But the court went on to hold that "the mere fact that the factual background of a case arose out of a land use dispute is not enough to say that the federal proceeding would interfere with state proceedings that involve important state interests for Younger abstention purposes."  Id. at 409 (citations omitted).  Drawing on the 1992 decision in Gwynedd Properties, 970 F.2d at 1202-03,  where the court had rejected abstention under Younger, Addiction Specialists held that "a federal claim alleging discriminatory *actions* by township officials in making land use decisions, as opposed to a claim challenging the validity of the state's land use *policies and laws*, did not implicate important state interests for Younger abstention purposes."  Addiction Specialists, 411 F.3d at 409 (citing Gwynedd Properties, 970 F.2d at 1202-03) (emphasis in original).

_____The importance of the Addiction Specialists opinion to the case before this Court is that it distinguishes between claims relating to alleged federal constitutional and statutory right violations and claims challenging the validity of the state law and the township zoning ordinance. The latter, the Third Circuit found, *did* implicate important state interests.  Id. at 410-11.  Thus where the plaintiff sought to enjoin the enforcement of an ordinance based on the township's alleged discriminatory motivations in passing the ordinance, the Addiction Specialist opinion found that  abstention is proper, because "any challenge of the Township's actions and motivations in passing the ordinance are inextricably intertwined with the facial validity challenge."  Id. at 411 & n.11.  But where the complaint alleged that the defendant township acted unconstitutionally in applying land use policies, Addiction Specialists held that  important state interests were not implicated, because "[i]n order to decide whether the Township has

engaged in willful and malicious application of the state and local land use policies, the District Court need not touch on the zoning policies themselves." Id. at 411.

In their motion, defendants argue that in order to afford plaintiffs the relief they request, "the Court would need to invalidate the Township's redevelopment plan and ordinances, which would, in turn, interfere with the state court's ability to provide any future relief or remedy in the lawsuit pending in state court." (Def. Supp. Br. at 3.)  The Court disagrees.  It does not appear that the federal complaint involves a facial validity challenge to Belleville Ordinances No. 3025 and 2026, nor does the federal complaint challenge Belleville's actions and motions in passing the land use ordinances.  Plaintiffs are not asking this Court to invalidate the Redevelopment Plan or other zoning laws.  Those issues are raised in plaintiffs' state case, where they challenge the open space restrictions and the zoning ordinances under state law.  As indicated above, the state court action is currently pending and does not allege any federal constitutional claims. (Compl.¶ 62.)

In this Court, Count 1 of the complaint asserts that defendants' actions constitute an unconstitutional taking of plaintiffs' properties.  And Counts 2 and 3 assert that defendants' actions and application of the land use policies violated plaintiffs' Fourteenth Amendment rights to Substantive Due Process and Equal Protection.  Applying the precedent of this Circuit discussed above, the Court is persuaded that it may not abstain because the issues in this case do not implicate important state interests for purposes of Younger abstention.

Defendants argue that even if the Court chooses not to abstain under Younger, it must dismiss the complaint for failure to state a claim upon which relief can be granted.

**Taking**

_____Count 1 of plaintiffs' complaint alleges that the land use restrictions imposed on plaintiffs' property by defendants have effected a taking of plaintiffs' property, violating the Fifth and Fourteenth Amendments.  Plaintiffs assert that defendants' actions were improperly motivated, deliberately taken in defiance of proper land use planning considerations, and not undertaken for the public good.  (Pl. Oppos. Br. at 16; Compl. ¶¶ 88, 89, 90, 104, 105, 106.) Applying the standard of review for motions to dismiss, the Court must accept all allegations and their reasonable inferences as true.  Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 962 (3d Cir. 1991).

Under its police power, a township may, within limitations, regulate the uses of property within its jurisdiction to promote the public good.  The Third Circuit has directed that "[t]he initial step in any taking analysis . . . is whether the challenged governmental action advances a legitimate public interest," and "[i]n this step, the governmental action is entitled to a presumption that it does advance the public interest."  Pace Resources, Inc. v. Shrewsbury Township, 808 F.2d 1023, 1030 (3d Cir. 1987) (citing Penn Central Transportation Co. v. New York City, 438 U.S. 104, 125 (1978)).

Even if the Court assumes that defendants have advanced a legitimate government interest, "[a] legitimate exercise of police power and in particular, a general land use regulation, may nevertheless offend the Fifth and Fourteenth Amendments if its impact 'denies [a landowner] the 'justice and fairness' guaranteed by' those Amendments."  Pace Resources, 808 F.2d at 1030 (citations omitted).  The Third Circuit has noted that "no precise formula for identifying a taking exists," but there are several factors that have proven relevant, including (1) the type of governmental interference; (2) the diminution in property value; and (3) the extent of

11

interference with 'reasonable, distinct, investment-backed expectations.'" Id. (citing Keystone Bituminous Coal Ass'n v. Duncan, 771 F.2d 707, 713 (3d Cir. 1985)).  In this context, "courts will invoke the taking clause of the Fifth Amendment only when zoning regulation interferes drastically with a property's possible uses." Pace Resources, 808 F.2d at 1031.

Here, albeit there was no physical invasion of plaintiffs' property, plaintiffs claim that their "land has been rezoned into complete inutility without just compensation, the primary characteristic of an unconstitutional taking." (Pl. Oppos. Br. at 16.)  The complaint pleads that plaintiffs had "distinct, investment-based expectations in their property" and "defendants' actions, in deliberately changing the designation of plaintiffs' property to worthless open space, 'deprived Plaintiffs of any all economic or beneficial use of the properties.'" (Pl. Oppos. Br. at 15; Compl. ¶¶ 69, 73.)  Assuming the facts in the complaint are true, plaintiffs have pled an interference with reasonable, distinct, investment-backed expectations.  Moreover, they have sufficiently pled a diminution in value sufficient to support a finding that the application of the zoning laws constitutes a taking.  Accordingly, plaintiffs are entitled to proceed on the merits of their claim for an unlawful taking.

**Equal Protection**

Count 2 alleges a violation of plaintiffs' equal protection rights under the Fifth and Fourteenth Amendments.

The complaint points out that the principals of New Horizon and Azan are American citizens of Indian descent, (Compl. ¶ 4), but does not allege membership in a suspect class or interference with a fundamental right.  Rather, the complaint alleges that "[d]efendants' actions in 'reaffirming' an over ten (10) year old Redevelopment Plan – which was never adopted in the

first instance – and attempting to relegate Plaintiffs' properties to 'open space' are a pretextual response to the opinions of certain self-interested property owners and a capitulation to the demands of community activist plaintiffs (CORR)." (Compl. ¶ 86.) Plaintiffs assert that "[d]efendants' actions expressly sought to: (i) improperly prevent any development on the New Horizon and Azan properties; (ii) improperly favor the Rainmaker Properties with high density zoning found nowhere else in the Township of Belleville; and (iii) capitulate to the demands of the CORR plaintiffs – at the expense of Plaintiffs' property rights – in order to resolve expensive and politically unpopular litigation." (Compl. ¶ 87.) Plaintiffs contend that defendants' actions "were undertaken in a blatant desire to benefit a favored group – the Rainmaker Parties and CORR plaintiffs – at the expense of New Horizon and Azan," and "were undertaken without regard to the fundamental principles of zoning, the substantive and procedural requirements of the MLUL, or Plaintiffs' constitutionally protected property interests." (Compl. ¶¶ 88-89.) Plaintiffs maintain that defendants' actions shock the conscience and bear no rational relationship to any legitimate state interest. (Compl. ¶ 89.)

Essentially, plaintiffs' equal protection claim is based on an impermissible application of a zoning law. As the Third Circuit has stated, "[l]ike other economic and social legislation, land use ordinances that do not classify by race, alienage, or national origin, will survive an attack based on the Equal Protection Clause if the law is 'reasonable, not arbitrary' and bears 'a rational relationship to a (permissible) state objective.'" Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 133 (3d Cir. 2002) (quoting Village of Belle Terre v. Boraas, 416 U.S. 1, 8 (1974)). "[L]and use regulations must possess a legitimate interest in promoting the public health, safety, morals, and the general welfare of its citizens in order to pass scrutiny." Congregation Kol Ami,

13

309 F.3d at 133 (citing Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 395 (1926)).

Noting that a classification may be upheld so long as "there is any reasonably conceivable state

of facts that could provide a rational basis for the classification," defendants argue that there was

a rational basis for their actions — the maintenance of open space.  (Def. Reply Br. at 7, citing

Highway Materials, Inc. v. Whitermarsh Township, No. 02-3212, 2004 U.S. Dist. LEXIS 19905

(E.D.P.A. Oct. 4, 2004)).

        "Land use ordinances will be deemed 'irrational' when a plaintiff demonstrates *either* that

the state interest is illegitimate (an ends-focus) or that the chosen classification is not rationally

related to the interest (a means-focus)."  Congregation Kol Ami, 309 F.3d at 133.  Here, plaintiffs

have asserted facts establishing that they are similarly situated to the Rainmaker Parties and the

owners of the SOHO Property.  (Compl. ¶¶ 60, 61, 87, 88.)  They contend that there was no

rational basis for the differential treatment that the defendants afforded the Rainmaker Parties

and owners of the SOHO Property.  (Compl. ¶¶ 86-91.)  They specifically maintain that "the

defendants' motives were irrational: to perpetrate a deception on the plaintiffs, and to acquiesce

to certain favored interests, all the while collecting taxes based on a classification the defendants

continue to disavow."  (Pl. Oppos. Br. at 17.)  The complaint, then, is asserting that defendants

have pursued an ends-focused, illegitimate state interest.  See Congregation Kol Ami, 309 F.3d at

133.

        Based on its scrutiny of the complaint, the Court cannot say as a matter of law that

plaintiffs can prove *no set of facts* in support of their equal protection claim.  Defendants' motion

to dismiss the claim is denied.

**Substantive Due Process**

14

Count 3 of plaintiffs' complaint alleges that defendants have violated plaintiffs' rights to substantive due process under the Fourteenth Amendment.

The Third Circuit has held that "whether a zoning official's actions or inactions violate due process is determined by utilizing a 'shocks the conscience' test."  Eichenlaub v. Township of Indiana, 385 F.3d 274, 285 (3d Cir. 2004); see also United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 400 (3d Cir. 2003).  This test is "designed to avoid converting federal courts into super zoning tribunals," and "[w]hat shocks the conscience is only the most egregious official conduct."  Eichenlaub, 385 F.3d at 285 (internal quotations and citations omitted).  Eichenlaub and United Artists Theatre Circuit address substantive due process claims arising out of zoning disputes, but the opinions are both reviewing summary judgment determinations, and the Circuit accordingly had the benefit of full discovery.  Here the Court must rely on the pleadings and accept all well-pleaded allegations of the complaint as true.  The Court can only grant defendants' motion if it appears beyond doubt that plaintiffs can prove no set of facts in support of their substantive due process claim that would entitle them to relief.

Plaintiffs urge that they possess protected interests in their properties and defendants have not just acted with an improper motive, but have acted so egregiously as to shock the conscience.  (Compl. ¶¶ 109-111.)  They maintain that defendants "deliberately acted to cheat the plaintiffs out of all economically beneficial use of their properties, *after* affirmatively promising the plaintiffs they could actively develop these parcels and concealing any reference to the very 'open space' restrictions that they now espouse," and that defendants "now shamelessly tax plaintiffs while declaring their property public open space."  (Pl. Oppos. Br. at 18.)  On those allegations and with the recognition that at this point, the Court's role is limited to determining

15

merely whether the complaint alleges that a violation of substantive due process occurred and alleges facts in support, the Court concludes that plaintiffs have pleaded substantive due process sufficiently to withstand a motion to dismiss.

## IV.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiffs' complaint is **denied**.


Dated: September 9, 2005                              s/ Katharine S. Hayden
                                                     Katharine S. Hayden, U.S.D.J.

16