NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

NEW HORIZON INVESTMENT CORP.
and AZAN INTERNATIONAL, INC.,

Civil Action No. 04-cv-3973 (PGS)

Plaintiffs,

**OPINION**

v.

MAYOR AND MUNICIPAL COUNCIL
OF THE TOWNSHIP OF
BELLEVILLE, et al.

Defendants.

SHERIDAN, U.S.D.J.

Defendants, Township of Belleville ("Township"), Planning Board of the Township of Belleville ("Planning Board"), and Mayor and Municipal Council of the Township of Belleville ("Township Officials") move for summary judgment in this Section 1983 zoning and land use case, where Plaintiffs, New Horizon Investment Corp. and Azan International, Inc. (collectively referred to as "Azan"), allege unlawful taking, as well as substantive due process and equal protection violations as a result of their land allegedly being zoned as open space and thus retaining no value[1]. For the reasons that follow, Defendants' motion is granted, and Azan's complaint is dismissed.

---

[1] Essex County Improvement Authority ("ECIA") is also a defendant. From a review of the docket, it appears that ECIA has not filed an Answer, and has not joined in this motion.

**I**

The facts and procedural history of this case are cumbersome. The dispute stems from the purchase of land by Azan, at an August 31, 1998, public auction held by the County of Essex, and the subsequent zoning and redevelopment disputes caused by Azan's desire to develop its land. The land that Azan purchased was a subdivided portion of the tract that comprised the Essex County Geriatrics site ("Geriatrics Site"), an institution historically owned by the County of Essex, and which was found to be defunct due to disuse.

By way of background, the property in question is situated at the busy intersection of Franklin Street and Belleville Avenue in Belleville, New Jersey, about a half of a mile from the Newark border, and directly across the street from a County-owned golf course, Hendricks Field. The County owned the Geriatric Site for decades. In 1930, the parcel was developed as the Essex County Isolation Hospital, a sanitarium for persons with infectious diseases. In addition to the main hospital building, there were several ancillary buildings and sprawling grounds which surrounded the main building. After World War II, advances in vaccines rendered the sanitarium obsolete. In 1964, the County began to use the site as a geriatrics facility. Although it served a public purpose during those years, Depression-era construction and design did not lend themselves to the needs of modern health care. As a result, the geriatric center lingered, and never reached its potential.

By the early 1990s, Township officials recognized that the Geriatric Site's future was uncertain, and that the County's interest in the center was floundering. The Township officials moved to shore-up their interest in the future development of the site, especially preserving some of the open space area (referred to by Belleville residents as the "Great Lawn"), by directing the Planning Board to investigate whether the Geriatric Site was in need of redevelopment.

Simultaneously with the Township's initiative, the State of New Jersey and the health research community identified a growing need to enhance research capabilities for the treatment of cancer within New Jersey. In 1993, public/private partnership entity known as the Center for Molecular Medicine & Immunology ("CMMI") expressed interest in modernizing and converting the main building of the Geriatric Site to its facility.

Thereafter, the Planning Board of Belleville passed a resolution recommending that the Township Council declare that the Geriatric Site be in need of redevelopment, and adopting the Planning Board's redevelopment study as its redevelopment plan. On June 22, 1993, based upon the Planning Board's recommendation, the Township Council adopted Ordinance No. 2607-A which deemed the 18.59-acre site "in need of redevelopment" pursuant to the redevelopment plan ("Redevelopment Plan"). This Redevelopment Plan called for the Geriatric Site to be divided into three parcels. Parcel 1 consisted of the existing administration building and surrounding land which the Redevelopment Plan deemed should be rehabilitated and restored to its original appearance. (Def. Stmt. of Facts ¶¶ 18, 19). Parcel 2 consisted of the superintendent's residence and surrounding land, on which the Redevelopment Plan permitted accessory uses for Parcel 1. Finally, Parcel 3, a portion of which Azan now owns, consisted of all remaining lands including parking lots and driveways, which the Redevelopment Plan designated as open space and passive recreation, such as playgrounds.[2]

---

[2] While it is undisputed that the Redevelopment Plan was adopted in 1993, Azan argues that it had no knowledge that Parcel 3 was intended as open space because the zoning map was never revised to reflect the findings of the Redevelopment Plan, or alternatively, argues that there was a defect in the process of adopting the Ordinance. Hence, it claims it had no notice that Parcel 3 was designated as open space.

In any event, by 1995, CMMI entered into a long term lease with the County for Parcel 1's which it intended to develop accordance with the Redevelopment Plan. In December 1995, the Planning Board amended the land use element of the Township's master plan to permit Parcel 1 to be developed in accordance with the Redevelopment Plan. That is, Parcel 1 of the Geriatric Site was "zoned for a planned office research park, with senior citizen housing and neighborhood retail as permitted conditional uses." (Pl. Compl. at ¶ 29). Soon thereafter, the County decided to sell Parcels 2 and 3 of the Redevelopment Area. After a failed attempt, the County, in conjunction with the Planning Board, subdivided Parcels 2 and 3 into eight smaller lots and conducted a public auction on August 31, 1998, to sell seven of them. The auction notice conspicuously indicated that the lots "may be subject to Redevelopment District zoning."[3] Nevertheless, Azan ultimately bid $465,000 for two of the lots within Parcel 3, and a joint venture known as Rainmaker purchased several other lots within Parcels 2 and 3. In October 1998, after Azan and Rainmaker had deposited twenty percent of the purchase price for the properties with the County, the County voided the auction and attempted to re-offer the properties. Azan and Rainmaker sued the County to enforce their rights (hereinafter Litigation 1). The parties eventually settled and the closings moved forward.

On December 28, 1998, during the pendency of Litigation 1, Azan entered into a contractual arrangement with Rainmaker regarding development of its lots. Azan granted Rainmaker the development rights on its lots in consideration of being paid a percentage of net rentals. In addition,

---

[3] If there is any merit in Azan's argument that development would be permitted on Parcel 3, it lies in the fact that the Township authorized subdivision of Parcels 2 and 3 into eight lots. There is no logical reason to do this, unless the Township intended to permit development on some or all of the lots. On the other hand, Azan's purchase based on several conversations with Township officials and without in depth research of the zoning requirement was imprudent.

Rainmaker would be responsible for negotiating a settlement of Litigation 1 with the County (which, as noted above, it did) and obtaining necessary zoning changes to accommodate their development plans.

At some point, prior to closing on the Rainmaker and Azan lots, Azan had second thoughts about its deal with Rainmaker, so Azan cooked up a scheme to purchase the lots from the County through a newly created corporate entity with a different name and then void its contract with Rainmaker. Upset with this prospect, Rainmaker sued. *Rainmaker Capital, LLC v. New Horizon Investment, Inc.*, Docket No. ESX-L-8434-99 (N.J. Super. Law Div. filed on Aug. 12, 1999) ("Rainmaker Litigation"). On August 13, 1999, Rainmaker closed on its lots and about two weeks later, Azan closed on its lots with the County.

Thereafter, the Township of Belleville amended the Land Use Ordinance to permit uses on commercial development on the Rainmaker lots. More specifically, on August 14, 2001, the Township passed Ordinance No. 2906, which allowed development of a shopping center. This governmental action sparked a negative reaction from the neighbors, and on October 5, 2001, the Citizens Organization for Responsible Redevelopment ("CORR") filed suit in the Superior Court of New Jersey against Rainmaker, Azan, and the Township seeking to invalidate Ordinance No. 2906 as well as to enforce the Redevelopment Plan's open space zoning restrictions as to Parcel 3. *Citizens Org. for Responsible Redevelopment v. Mayor and Council of Belleville*, Docket No. ESX-L-9243-01 (N.J. Super. Ct. Law Div. filed on Oct. 5, 2001) ("CORR Litigation").

On December 9, 2003, the CORR plaintiffs, the Township Defendants, and Rainmaker entered into a settlement agreement (the "CORR settlement"). Azan was not a party to the CORR settlement, and Azan objected to it. Nonetheless, the CORR Litigation was dismissed by the

5

Superior Court in its entirety with a provision preserving some of Azan's rights with regard to the zoning of its lots. The CORR settlement had two components. First, Rainmaker was permitted to develop townhouses on its lots, and second, the Township was to reaffirm the designation of the Great Lawn as open space through several different means including, but not limited to, a Master Plan amendment[4]. In order to effectuate this Settlement, the Township adopted two ordinances in March 2004 ("2004 Ordinances"). The Ordinances only concern the Rainmaker lots. According to the Township, the lots subject to the CORR Litigation Settlement did not include the Azan lots[5].

On June 30, 2004, Azan filed an action in lieu of prerogative writ in a matter captioned *New Horizon v. Mayor and Council of Belleville*, Docket No. ESX-L-3898-04 (N.J. Super. Ct. Law. Div. filed on June 30 2004) ("Litigation 4") to challenge the Redevelopment Plan's open space designations, and request that the court revise the zoning to permit Azan to develop residential properties, and thus invalidate the 1993 Redevelopment Plan. The complaint also challenged the enactment of the 2004 Ordinances and the resultant zoning changes. The facts alleged in the state court suit are essentially the same as the facts alleged in this action. The parties cross-moved for summary judgment in the state court action, and on October 23, 2007, Judge Leath granted the Township Defendants' motion and dismissed Azan's state court complaint entirely. Judge Leath noted that Azan had purchased the properties with knowledge of the 1993 Redevelopment Plan and that the Plan restricted the use of the land to open space and passive recreation. Judge Leath further noted that Azan had not utilized administrative remedies such as obtaining an opinion from the

---

[4] It is unclear from the record whether this amendment to the Master Plan has been adopted.

[5] Azan acquired Block 540, Lots 1 and 2. The 2004 Ordinance encompassed Block 550, Lot 1, and Block 540, Lots 1.02 and 5.

zoning board, or filing for a variance, and found that the court was without jurisdiction to hear challenges to the open space restrictions because Azan had not developed a full factual record. Litigation 4 is presently on appeal.

It is from this harried and litigious procedural posture that plaintiffs' Section 1983 cause of action appears to arise. The Township Defendants allege that they have never taken formal action to abandon or withdraw the Redevelopment Plan, an allegation Azan contests. Defendants further allege that Azan has never applied to develop its property, sought zoning changes, requested amendment of the Redevelopment Plan, or applied for a variance from the open space restrictions, aside from a single drawing submitted by Azan's former counsel which was deemed inadequate as a zoning application. Defendants have moved for summary judgment on all counts of Azan's complaint based on statute of limitations, the entire controversy doctrine, ripeness, and the substantive merits.

## II

Defendants claim that this case is ripe for summary judgment. It is well-established that summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in

his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue of material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48.

Here, Defendants argue several reasons why summary judgment should be granted in this case, including that it is not yet ripe for review; that it is barred by the entire controversy doctrine; that it is barred by the statute of limitations; that Azan has failed to present any triable constitutional claims; and that Azan lacks standing to challenge the 2004 ordinances. Because this Court agrees that the matter is not yet ripe for review, summary judgment will be granted in favor of Defendants.

## III

Defendants argue that Azan failed to apply for a variance or other amendment to the zoning ordinances and Redevelopment Plan affecting its lots, and, therefore, they have yet to receive a final administrative determination from the Township Defendants as to their property. Thus, argue the

Defendants, Azan's Section 1983 claims are not yet ripe for review before this Court. This argument is persuasive.

The Supreme Court of the United States, in *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), established a two tests for assessing the ripeness of a Takings claim. The two tests are (1) the finality rule; and (2) the exhaustion of just compensation procedures.[6] In the Third Circuit, the finality rule applies to substantive due process and equal protection claims in the context of land use, and is applicable only to as-applied, not facial, challenges to a zoning ordinance under Section 1983. *County Concrete*, 442 F.3d 159 at 164. The finality rule states that "a claim . . . is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson*, 473 U.S. at 186. It is not tantamount to an exhaustion of administrative remedies, but instead requires that some governmental action or statement make it clear that government would deny development of the land (and thus strip away any economic utility). Most often, denial of a land use application is such proof. *Id.* at 187-88, 192. Generally, "exhaustion" of administrative remedies in this context is interchangeable with the concept of "present[ing] a development plan to the zoning board or [seeking] variance relief from the applicable zoning restrictions." Thus, true exhaustion through every channel, including appeals, is not required. *Callery v. Twp. of Weehawken*, 2006 WL 1313053 (N.J. Super. May 15, 2006) (slip op. at *4).

Here, Azan, in its opposition brief, claims to be lodging facial challenges against the 2004

---

[6] The second test in *Williamson*, "exhaustion of just compensation procedures," is only applicable to Just Compensation Takings claims once a plaintiff has met the finality rule test, and applies it to both facial and as-applied taking claims. *County Concrete Corp. v. Twp. of Roxbury*, 442 F. 3d 159, 168 (3d Cir. 2006).

Ordinances, as opposed to as-applied challenges. However, the Hon. Katharine S. Hayden, U.S.D.J. ruled differently on this very matter. Judge Hayden denied Defendants' motion to dismiss, citing the lack of a facial invalidity claim which alleges inappropriate actions on the part of the Township defendants in passing the ordinances. Since Azan's federal complaint does not impact a substantial state interest, Judge Hayden found no reason to abstain.[7] In that context, Judge Hayden opined,

> [i]t does not appear that the federal complaint involves a *facial validity* challenges to [the 2004 Ordinances], nor does the federal complaint challenge Belleville's actions and motions in passing the land use ordinances. Plaintiffs are not asking this Court to invalidate the Redevelopment Plan or other zoning laws. Those issues are raised in plaintiffs' state case, where they challenge the open space restrictions and the zoning ordinances under state law.

Hayden Op. at 10 (emphasis added).

There is no reason for this Court to re-analyze Judge Hayden's determination. She refused to abstain because "the issues in this case do not implicate important state interests" given that Azan only set forth an as-applied challenge. *Id.* This decision should not be disturbed.

Because Azan asserts an as-applied challenge to the 2004 Ordinances, it would be necessary for Azan to adhere to the procedures set forth in *Williamson* and *County Concrete* unless it could show that applying for such a variance or zoning approvals would be futile. *Palazzalo v. Rhode Island*, 533 U.S. 606, 620 (2001). Azan does not dispute that it did not seek a variance or other alternative development plan. Furthermore, Azan does not provide sufficient evidence to prove futility.

---

[7] *See, e.g.*, *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992); *Younger v. Harris*, 401 U.S. 37 (1971); *Gwynedd Prop., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199-1200 (3d Cir. 1992). If the Court, here, agreed with Plaintiff's contention that it is a facial attack, which it does not, then the Complaint may raise *Younger* issues.

A landowner does not have to "submit applications for their own sake" and must "explore development opportunities . . . if there is uncertainty as to the land's permitted use." *Id.* at 622. Plaintiff must show that the Defendants reached a "definitive position" in order to show finality, and thus, futility. *Williamson*, 473 U.S. at 192. Here, Azan alleges that representations from counsel and the passage of the 2004 Ordinances, themselves, indicate a final decision for purposes of futility. Azan does not cite to any independent proof in the record which suggests that a variance application is futile. The mere passage of the 2004 Ordinances does not mean that it would be futile for Azan to request a variance – the point of applying for the variance would be to circumvent the 2004 Ordinances. As noted in the *Callery* case, reference to some sort of affidavits or certifications by the board, township officials, or another regulatory agency indicating an unwillingness to grant a variance or otherwise clearly proving futility would constitute sufficient proof of futility. *Callery*, 2006 WL 1313053, at *5 (citing *Gardner v. N.J. Pinelands Comm'n*, 227 N.J. Super. 396 (Ch. Div. 1988)). No such documentation was provided by Azan. To the contrary, since the 2004 Ordinances clearly do not address Azan's lots, it is evident that the Township was holding the issue open to a future date.

Since there is no dispute of fact that Azan did not even attempt to file for a variance, and Azan offers insufficient proof of futility, the finality rule of *Williamson* has not been satisfied. Therefore, Azan's claims are dismissed on ripeness grounds.

At first blush, it seems inequitable that the County with the Township's knowledge, would sell property to unsuspecting taxpayers knowing the lots could not be developed. But that is not what is happening here. Azan has made a clear choice to litigate rather than to avail themselves to the planning process. Azan obviously believes it can negotiate higher density through litigation than

it can by adhering to the conventional planning process.  It has overplayed its hand.

The Court need not yet address the merits of the substantive claims because it appears that ripeness is a significant obstacle.  Additionally, this Court declines to address the remainder of Defendants' arguments, as they are largely moot.

## **VII**

Because Azan failed to even apply for a variance from the Township's Zoning Board of Adjustment, Azan has yet to receive a final administrative decision from the Township that would evidence a violation of Section 1983.  As to this issue of law, there are no genuine issues of material fact.  Defendants are therefore entitled to judgment as a matter of law, and summary judgment is hereby granted in favor of defendants as to all counts of Azan's complaint.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

October 14, 2008